UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GORDON WOODLEY,

                Plaintiff,

         v.

AETNA HEALTH, INC.; ALASKA AIR GROUP, INC. WELFARE BENEFIT PLAN & TRUST; ALASKA AIRLINES, INC. PENSION/BENEFITS ADMINISTRATIVE COMMISSION,

                Defendants.

CASE NO. C08-1612RSM

ORDER ON SECOND MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

This matter comes before the Court on Defendants' Second Motion for Summary Judgment.[1] The Court denied Defendants' first Motion for Summary Judgment on June 18, 2009. The Court determined that the evidence was insufficient to allow the Court to determine the standard of review of Aetna's claim denial. The evidence was also insufficient for the Court

---

[1] In responding to Defendants' Second Motion for Summary Judgment, Woodley attempted to combine his Response with a Cross-Motion for Summary Judgment. His submission failed to comply with Local Rule 7(d)(3), however, as the noting date should have been no earlier than March 5, 2010. His submission also failed to separate the factual and legal arguments supporting his Response from those supporting his attempted cross-motion. The Court considers his Response in full, and disregards his improperly filed cross-motion.

ORDER
PAGE - 1

to grant summary judgment for Defendants. The Court could not find that Section 5 of the Administrative Services Contract between Aetna and Alaska Air Group Welfare Benefits Plan and Trust, dated August 20, 1990, was the operative agreement as of 2007. The Court could not find that Woodley was not entitled to benefits under the express terms of the Plan, because the operative 2007 Plan was not in the record. The absence of the 2007 Plan from the record also led the Court to deny Defendants' arguments that Woodley's promissory estoppel claim should be dismissed.

In their current motion, Defendants argue first that the Court should review Aetna's denial of Woodley's claim for benefits for an abuse of discretion. Defendants also argue that Woodley's ERISA claim should be dismissed because an exception for "experimental" procedures excluded his claim from coverage under the terms of the insurance Plan. Finally, Defendants argue that Woodley's promissory estoppel claim should be dismissed because the exclusion for experimental procedures was not ambiguous.

Woodley counters that Aetna's decision to deny his claim should be reviewed de novo. He argues that Aetna improperly denied his claim because (1) Aetna had already pre-certified his claim; (2) Aetna has not produced a copy of any "experimental exception" operative in 2007; (3) Aetna improperly changed its reasons for denying his claim at both the first and second levels of the claim appeals process; (4) Aetna was wrong in stating, in its final appeals decision, that Woodley had not called the pre-certification telephone line; and (5) Aetna denied his claim for all of the medical procedures in question, when only some of them were even arguably experimental. He also argues that his promissory estoppel claim should not be dismissed because the exclusion for experimental procedures still has not been produced, and is in any case ambiguous.

## II. DISCUSSION

### A. Summary Judgment Standard of Review

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The

ORDER
PAGE - 2

Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *Id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc*., 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).

**B.  Standard of Review of Aetna's Claim Denial**

Despite Defendants' new proffers of evidence, there is insufficient evidence for the Court to conclude either that Section 5 of the Administrative Services Contract was the operative agreement in 2007, or that the Court should review Aetna's claim denial under an abuse of discretion standard.

In ERISA denial of benefits cases such as this, the default standard of review is de novo. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "[F]or a plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator." *Id.*

Since the Court's June 18 ruling, the only evidence that Defendants have proffered regarding their argument that the abuse of discretion standard applies is one sentence from Thomas G. Richards, Managing Director, Employee Benefits at Alaska Air Group: "Based on information and belief, the Administrative Services Contract previously submitted as Exhibit A to the Declaration of Charles Huber (Court Dkt. #21) was the governing agreement . . . at the time Aetna adjudicated Woodley's claim . . . ." Without more detail or information, this statement is insufficient to persuade the Court that the seventeen-year-old (in 2007) document was the operative agreement in 2007. A genuine issue of material fact remains.

ORDER
PAGE - 3

Furthermore, even if the Court were satisfied that the Section 5 language was operative at the time of Woodley's claim, the Court would likely find that the language does not "unambiguously provide discretion to the administrator." *See Abatie*, 458 F.3d at 963. The Ninth Circuit, sitting en banc, has recently reaffirmed its holding that "ERISA plans are insufficient to confer discretionary authority on the administrator when they do not grant any power to construe the terms of the plan." *Id.* at 963 (citing *Ingram v. Martin Marietta Long Term Disability Income Plan*, 244 F.3d 1109, 1112 (9th Cir. 2001)). Section 5 states that the Contractholder "delegate[d] to Aetna authority to make determinations on behalf of the Contractholder with respect to benefit payments under the Plan and to pay such benefits." This language does not grant authority to construe the terms of the plan.

Instead, Section 5 resembles contract language that the Ninth Circuit has held merely identifies the Plan administrator's tasks, and bestows no power to interpret the plan. *See Ingram*, 244 F.3d at 1112 (plan language was that "[t]he carrier solely is responsible for providing the benefits under [the] Plan"; "[t]he carrier will make all decisions on claims"; and "the review and payment or denial of claims and the provision of full and fair review of claim denial pursuant to [ERISA] shall be vested in the carrier."). Discretion may not be "inferred simply from the fact, standing alone, that [the administrator] is making benefit decisions for which it must give reasons." *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1206 (9th Cir. 2000).

The Section 5 provision can be contrasted with the language of those provisions which have led the Ninth Circuit to apply abuse of discretion review because the provisions unambiguously conferred discretion. *See*, *e.g.*, *Abatie* ("The *responsibility for* full and *final determinations of eligibility for benefits; interpretation of terms*; determinations of claims; and appeals of claims denied in whole or in part under the HFLAC Group [Home Life] policy rests *exclusively* with HFLAC.") (emphases in *Abatie*); *Pannebecker v. Liberty Life Assur. Co. Of Boston*, 542 F.3d 1213, 1215 (9th Cir. 2008) ("[administrator] shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility thereunder"); *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1107 (9th Cir. 2000) (conferring "sole

ORDER
PAGE - 4

discretion to interpret the terms of the Plan"); *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 n.5 (same).

Because the Section 5 language does not track precisely the language in prior cases, Defendants have a fair argument that discretion was conferred. But "[i]f language only arguably confers discretion, it does not unambiguously confer discretion and cannot escape the default of de novo review." *Feibusch v. Integrated Device Technology, Inc. Employee Ben. Plan*, 463 F.3d 880, 884 (9th Cir. 2006). "If an insurance company . . . wants to have discretion in making claims decisions, it should say so." *Ingram*, 244 F.3d at 1113-14. What is clear from the record is that Aetna and Alaska were able to unambiguously confer discretion when they so desired. Amendment 7 to the agreement provides that Aetna shall "provide assistance to Contractholder for subrogation services." Doc. 21, Ex. A, at 17. With regards to its subrogation services, "Aetna has the exclusive discretion" regarding certain subrogation duties. *Id.* The word "discretion" does not appear in the Section 5, however.

Woodley also has strong arguments that the procedural irregularities in Aetna's handling of Woodley's claim warrant heightened scrutiny. In sum, while it appears that the de novo standard applies, the Court refrains from deciding the issue at this time. On this motion, as on Defendants' previous motion for summary judgment, the outcome would be the same under either standard.

C. **Whether the Procedure Was Excluded as Experimental**

Defendants argue, as they did on their first motion for summary judgment, that Woodley is not entitled to benefits because the medical procedures were excluded from coverage under a provision in the Employee Handbook excluding experimental procedures.

In its June 18, 2009 ruling, the Court noted "that it cannot find that plaintiff is not entitled to benefits under the express terms of the plan, because the operative plan i[s] not in the record at this time." Defendants have provided other Plan documents and two declarations, but the operative Plan is still not in the record. The new evidence is problematic for several reasons and does not resolve the factual question of what terms were in effect in 2007.

ORDER
PAGE - 5

Defendants have provided what they contend is the 2006 Employee Benefits Handbook. There is, however, a disjunction between the table of contents and the actual text of the document. The page numbers indicated in the table of contents do not match the page numbers of the sections in the text. This disparity casts doubt on the authenticity of the document as a complete and genuine copy of the 2006 handbook.

Even if the text of the document is, in fact, the 2006 handbook, the evidence is still insufficient for the Court to hold the 2006 handbook's relevant "experimental and investigational services" provision operative in this case. Defendants offer the declaration of Richards, who "do[es] not believe that there is any difference between the language set forth in the applicable provision (page 20) of the" 2006 and 2007 handbooks. This statement is problematic for two reasons. First, it is not clear when Richards reviewed the 2007 provision, or to what extent. Second, Richards cites the incorrect page of the alleged 2006 Plan. He cites page 20, but the provision is in fact on page 24 of the proffered 2006 handbook. Richards's declaration is thus an insufficient basis to determine the operative "experimental" exclusion language, if any, at the time of Woodley's treatment.

Defendants also submitted a second declaration of Valecia Jones. On this issue, Jones states that the exclusion in the alleged 2006 handbook is the same as the exclusion in the 2007 handbook. She had previously stated that the 2007 exclusion was substantively the same as the 2009 exclusion. There is a triable issue of fact regarding the accuracy of Jones's recollection of the 2007 provision over a year after she reviewed, perhaps only briefly, a one-page excerpt from the 2007 handbook, which was downloaded from the Internet, sent to the insured, and apparently not retained.

Furthermore, Jones's and Richards's statements and Defendants' general argument that the 2006, 2007 and 2009 versions of the exclusion are substantively the same appear to be contradicted by the record. The exclusion appears to have undergone at least one major change at some point between the issuance of the alleged 2006 handbook and the 2009 handbook. The "experimental/investigative" one-paragraph bullet point in the 2006 version was broken completely out of the bullet point list of exclusions and amplified as it became its own section,

ORDER
PAGE - 6

"What are Experimental/Investigative Services?", in the 2009 version. Instead of a simple, broadly worded bullet point exclusion, the 2009 handbook has two complete paragraphs of text and five bullet points, with more specific clauses. *See* Document 16, Ex. A, the 2009 handbook, at 34-35; Doc. 47, Ex. A, at 24. Richards may believe that the 2006 and 2007 provisions are the same, and Jones may not "believe there is any substantive difference" between the 2007 and 2009 provisions. But they are not, as Defendants contend in the present motion, "identical." Doc. 46, at 3. A genuine issue of material fact clearly remains regarding what the language of the experimental procedure exclusion was in 2007, if any, and to what extent, as Jones herself declared, "[t]he version of the Plan that was contained on the Alaska Airlines website during Mr. Woodley's appeal was revised in 2007." Doc. 28, ¶ 2.

Finally, the Defendants provided Doc. 47, Ex. B, the open enrollment letter. They argue that this letter states that the *only* change made to the Handbook between the 2006 and 2007 versions was to the acupuncture benefit, which was increased from 15 to 20 visits. In fact, the open enrollment letter merely states that, at least for purposes of conditions for which acupuncture may be sought, the "covered conditions have not changed; the list includes most conditions for which acupuncture is an alternative treatment, and is found in your Benefits Handbook . . . ." This language could simply mean that the conditions for which acupuncture services may be sought have not changed. It does not mean that the Plan's language regarding experimental procedures, or other non-covered services, remained unchanged from 2006 to 2007. Richards states, apparently based on the language in the open enrollment letter, that between 2006 and 2007 the "only change made to the Plan was the acupuncture benefit . . . . *No other changes were made to the Plan, or any provisions contained therein*." (emphasis added). This bare assertion is, along with Defendants' other recent submissions, discussed *supra*, insufficient to dispose of the genuine issue of material fact that existed when the Court denied Defendants' first motion for summary judgment.

**D. Woodley's Promissory Estoppel Claim**

Relying on *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812 (9th Cir. 1992), Defendants argue that Woodley's promissory estoppel claim must be dismissed because the

ORDER
PAGE - 7

exclusion for experimental procedures is not ambiguous. As mentioned above, without further evidence or testimony at trial, there remains a genuine issue of whether the proffered exclusion provision was the operative provision at the time of Woodley's benefits claim. The Court cannot now find that the operative provision was unambiguous, or that Woodley's estoppel claim must be dismissed.

### III. CONCLUSION

The Court hereby finds and ORDERS:

(1)  Defendants' Second Motion for Summary Judgment (Dkt. #46) is DENIED.

(2)  The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 9th day of April 2010.

                                            RICARDO S. MARTINEZ
                                            UNITED STATES DISTRICT JUDGE